2018R00871/JF/CAH

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY



FILED
DEC 1 1 2019
AT 8:30        1:35     P.M.
WILLIAM T. WALSH
CLERK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. |
| | : | |
| | : | Criminal Number: 19-902 (WJM) |
| v. | : | |
| | : | 18 U.S.C. § 1343 |
| | : | 18 U.S.C. § 1957 |
| JONATHAN BAKER | : | 18 U.S.C. § 2 |

**INDICTMENT**

The Grand Jury in and for the District of New Jersey, sitting at Newark, charges:

**COUNTS ONE THROUGH FIVE**
(Wire Fraud)

**Individuals and Entities**

1.  At all times relevant to this Indictment:

    a.  Defendant Jonathan Baker ("BAKER") was a resident of Green Township, New Jersey. BAKER held the titles of chief financial officer ("CFO") of Victim-Company 1 and Manager of Victim-Company 2 (collectively, the "Victim-Companies"). He also served on the Board of Directors of Victim-Company 1 and was a member of Victim-Company 2. As the CFO, BAKER had access to and utilized a variety of financial accounts at Sussex Bank belonging to the Victim-Companies.

    b.  Victim-Company 1 was formed on or about January 18, 2015, and was a small privately held retail construction company located in Sparta,

New Jersey. Victim-Company 1 acted as a construction manager and a general contractor for construction projects, such as new business offices, retail spaces, and restaurants.

   c. Victim-Company 2 was formed on or about January 28, 2015. Its primary purpose was to hold 100% of the voting and equitable interest in Victim-Company 1. At the time of its formation, Victim-Company 2 had nine individual members, including BAKER, each of whom served concurrently as members of the Board of Directors of Victim-Company 1.

   d. BAKER controlled, and was manager and CEO, of various entities that were not related to the Victim-Companies, including, but not limited to: Arley Farms, LLC ("Arley Farms"); 8 Quaker Road LLC ("8 Quaker Road"); BSG New Jersey/BSG Madison Inc. ("BSG"); J. Paul Allen Inc. ("JPA"); and Konoba LLC ("Konoba") (collectively, the "Baker Entities").

   e. BAKER maintained and controlled various bank accounts for himself and the Baker Entities at Sussex Bank.

   f. The "Drilling Company" was a directional drilling company formed in 2015. The Drilling Company entered into a subcontract, which became effective on May 25, 2017, to perform drilling work in Pennsylvania (the "Project"). In or about March 2017, BAKER and JPA entered into a partnership with the Drilling Company to provide funding and services to the Drilling Company in connection with the Project and other drilling work.

g.    Victim-Lender 1 and Victim-Lender 2 were commercial lending companies that provided loans to construction companies to purchase construction equipment.

h.    Victim-Lender 3 was a commercial lender that provided short-term financing to merchants and small businesses.

### The Scheme to Defraud

2.    Beginning at least as early as in or around 2015 through in or around 2018, in Sussex County, in the District of New Jersey and elsewhere, defendant

<div align="center">JONATHAN BAKER</div>

knowingly and intentionally devised and intended to devise a scheme and artifice to defraud the Victim-Companies, Victim-Lender 1, Victim-Lender 2, and Victim-Lender 3, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, which scheme and artifice was in substance as set forth below.

### Goal of the Scheme to Defraud

3.    The goal of the scheme was for BAKER to enrich himself by using his senior position at the Victim-Companies to embezzle funds from the Victim-Companies and by fraudulently inducing Victim-Lender 1, Victim-Lender 2, and Victim-Lender 3 (collectively, the "Victim-Lenders") into providing funds to BAKER and his associated entities through fraudulent use of Victim-Company

1's name, bank statements, balance sheet, and bank accounts.

## Manner and Means of the Scheme to Defraud

4.  It was part of the scheme to defraud that:

**Embezzlement from the Victim-Companies**

a.  BAKER fraudulently misappropriated millions of dollars from the Victim-Companies' bank accounts and used the funds for the benefit of himself, the Baker Entities, and other entities not affiliated with the Victim-Companies, including the Drilling Company. BAKER used the misappropriated funds for a variety of purposes unrelated to the Victim-Companies' business, including but not limited to, mortgage payments on BAKER's residence, the purchase of a BMW, and the purchase of six donkeys.

b.  BAKER used the Victim-Companies' credit cards to make unauthorized personal purchases.

c.  BAKER added some of the Baker Entities as sub-accounts to the credit card accounts owned by Victim-Company 1 and used those accounts for the benefit of BAKER and the Baker Entities.

d.  BAKER did not disclose or seek approval from the other members of the Victim-Companies for the millions of dollars he misappropriated from the Victim-Companies' bank accounts for the benefit of himself, the Baker Entities, and other entities associated with BAKER, including the Drilling Company.

e.  BAKER created a false impression that he was acting in the

4

best interests of the Victim-Companies, while at the same time misappropriating millions of dollars from the Victim-Companies' bank accounts. For example, from in or about September 14, 2017 to in or about November 9, 2017, BAKER claimed that he had taken a 25% reduction in his salary, along with other members of the Victim-Companies, to rebuild the Victim-Companies' cash reserves, when during the same period, BAKER transferred hundreds of thousands of dollars from Victim-Company 1's accounts to the accounts of JPA, BSG, and Arley Farms.

**False Statements to the Victim-Lenders**

      f.    BAKER obtained funds through fraudulent means by causing Victim-Company 1 to enter into agreements with commercial lenders, including but not limited to the Victim-Lenders, based on fraudulent pretenses and false statements.

      g.    On or about February 7, 2017, BAKER secured financing for a Vermeer Directional Drill for the Project by causing Victim-Company 1 to enter into a Loan and Security Agreement with Victim-Lender 1 for the principal amount of approximately $411,918. In support of the application, BAKER attached a falsified "certified copy" of a resolution purportedly adopted at a meeting of the Board of Directors of Victim-Company 1 on February 7, 2017, authorizing the transaction.

      h.    On or about February 7, 2017, BAKER caused Victim-Company 1 to enter into a commercial financing agreement with Victim-Lender

5

2, pursuant to which Victim-Lender 2 agreed to loan Victim-Company 1 approximately $89,872 to purchase drilling equipment for the Project. In support of the loan application, BAKER attached a falsified resolution purportedly adopted at a meeting of the Board of Directors of Victim-Company 1 on February 7, 2017, approving the transaction.

        i.      The Victim-Companies were not in the drilling business and had no use for a drill or drilling equipment. Rather, the drill and the drilling equipment were for the benefit of the Drilling Company, BAKER, and the Baker Entities.

        j.      BAKER caused Victim-Company 1 to default under the agreements with Victim-Lenders 1 and 2.

        k.      On or about July 20, 2017, Victim-Lender 3 entered into a Future Receivables Sale Agreement with Victim-Company 1 and the Drilling Company under which Victim-Lender 3 agreed to advance $300,000 to Victim-Company 1 and the Drilling Company in exchange for a claim to $335,700 in future receivables from the two companies. In support of the loan application, BAKER made numerous fraudulent statements, including the following:

        i.      In or about July 2017, BAKER submitted a fraudulent subcontract between the Drilling Company and the general contractor on the Project, which BAKER altered to state that the Drilling Company was a company owned by Victim-Company 1 and to list BAKER and his contact information at Victim-Company 1.

6

      ii.     In or about July 2017, BAKER submitted false and fraudulently altered bank statements for the Drilling Company for the period January 2017 to June 2017 to Victim-Lender 3.

      iii.    In a phone call on or about July 11, 2017, BAKER falsely stated to a representative of Victim-Lender 3 that Victim-Company 1 has "a business unit, [the Drilling Company], which is an environmental contractor. We do pipeline installation work, underground utility installation work, and the like." BAKER further misrepresented that "[Victim-Company 1] owns 100% of [the Drilling Company]."

    l.    After receiving the cash advance from Victim-Lender 3, BAKER misappropriated a portion of the cash for himself and the Baker Entities and used other portions of the cash to cover up his embezzlement from the Victim-Companies.

    m.   BAKER caused Victim-Company 1 to default under the agreement with Victim-Lender 3.

    n.    BAKER did not disclose or seek approval from the other members of the Victim-Companies before causing Victim-Company 1 to enter into agreements with the Victim-Lenders.

    o.    BAKER further concealed the fraud by making false statements to members of the Victim-Companies after they confronted him with evidence of the fraud.

    p.    For example, on or about January 8, 2018 at approximately

7

12:23 PM, a representative of a retail client of Victim-Company 1 ("Client 1") sent a partner and project manager at Victim-Company 1 ("Partner 1"), a notice of a lien filed against Victim-Company 1 by Victim-Lender 3 stating that Victim-Company 1 had defaulted on its obligations under a merchant cash advance agreement and, therefore, Client 1 should remit all payments for Victim-Company 1's work directly to Victim-Lender 3. Partner 1 forwarded the notice to BAKER, and other partners of Victim-Company 1, by email and asked for an explanation. Later that day, Baker responded in an email to partners at Victim-Company 1 by falsely stating:

> [S]omeone at [Victim-Lender 3] messed up in a major way and linked [Victim-Company 1's] information with another client of theirs with a similar company name. They then used our information in connection with a UCC lien filing when the other company defaulted on their loan obligation . . . . We will be receiving a retraction/apology letter via email today from [Victim-Lender 3], and they will be notifying [Client 1] directly as well of the mistake.

q. On or about January 12, 2018, BAKER falsely represented in an email to Partner 1 that a representative of Victim-Lender 3 called BAKER "to apologize for not getting the letter out" and would "have someone get the letter over to us."

r. From in or about January 12, 2018 to in or about January 15, 2018, BAKER attempted to further conceal the fraud by refusing to meet or join conference calls with the members of the Victim-Companies to discuss the liens against Victim-Company 1, refusing to produce the Victim-Companies' bank statements to the members of the Victim-Companies, changing the locks

8

on the Victim-Companies' offices, and attempting to disable the Victim-Companies' email and phone system.

s. BAKER further attempted to conceal the fraud when on or about January 15, 2018, BAKER sent an email to the members of the Victim-Companies stating that he authorized his wife to repurchase all outstanding shares of Victim-Company 1 pursuant to a purported stock sale agreement, dated April 13, 2015, and attempted to terminate all members of the Victim-Companies.

t. BAKER's conduct resulted in millions of dollars of losses to the Victim-Companies and the Victim-Lenders.

5. On or about the dates set forth below, for the purpose of executing and attempting to execute the scheme and artifice to defraud, in Sussex County, in the District of New Jersey and elsewhere, defendant

JONATHAN BAKER

knowingly and intentionally transmitted and caused to be transmitted by means of wire communications in interstate and foreign commerce certain writings, signs, signals, pictures, and sounds, as set forth more fully below, each such wire transmission constituting a separate count of this Indictment:

| Count | Approximate Date | Description |
|---|---|---|
| 1 | April 28, 2016 | Interstate wire transfer of approximately $10,000 from a Victim-Company 1 account to an account held by a contractor that did work on BAKER's personal home |
| 2 | October 11, 2016 | Interstate wire transfer of approximately $7,500 from a Victim-Company 1 account to an account held by a contractor that did work on BAKER's personal home |
| 3 | July 20, 2017 | Interstate wire transfer of approximately $177,461.60 from Victim-Lender 3 to a Victim-Company 1 bank account |
| 4 | November 27, 2017 | Interstate wire transfer of approximately $35,000 from a Victim-Company 1 account to an account held by the Drilling Company |
| 5 | August 7, 2017 | Deposit of check number 17535 from Victim-Company 1 made out to "BSG New Jersey LLC" in the amount of $131,600, which involved an interstate wire. |

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS SIX THROUGH EIGHT
(Monetary Transactions Derived From Specified Unlawful Activity)

6. The allegations contained in paragraphs 1 and 4 of this Indictment are incorporated and realleged as if fully set forth herein.

7. On or about the dates set forth below, in the District of New Jersey or elsewhere, defendant

JONATHAN BAKER

knowingly engaged in the following monetary transactions by, through, and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is the deposit, withdrawal, transfer, and exchange of United States currency and funds, such property having been derived from a specified unlawful activity, that is wire fraud:

| Count | Monetary Transaction Transfer | Approximate Date | From |
|---|---|---|---|
| 6 | Payment of $20,000 to Wells Fargo Home Mortgage | January 9, 2018 | BAKER bank account |
| 7 | Check for $15,000 addressed to BMW of Newton | April 15, 2015 | BSG bank account |
| 8 | Check for $19,900 addressed to Up and Above Contracting | June 11, 2015 | 8 Quaker Road bank account |

All in violation of Title 18, United States Code, Sections 1957 and 2

11

## FORFEITURE ALLEGATION AS TO COUNTS ONE THROUGH FIVE

1.  As a result of committing the wire fraud offense charged in Counts One through Five of this Indictment, defendant JONATHAN BAKER shall forfeit to the United States, pursuant to Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, constituting or derived from proceeds traceable to the violation of Title 18, United States Code, Section 1343 alleged in Counts One through Five of this Indictment.

## FORFEITURE ALLEGATION AS TO COUNTS SIX THROUGH EIGHT

2.  As a result of committing the money laundering offense charged in Counts Six through Eight of this Indictment, defendant JONATHAN BAKER shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), all property, real or personal, involved in such money laundering offense, and all property traceable to such property.

### Substitute Assets Provision
### (Applicable to All Forfeiture Allegations)

3.  If any of the property described above, as a result of any act or omission of the defendant:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third party;

    c.  has been placed beyond the jurisdiction of the court;

    d.  has been substantially diminished in value; or

  e.  has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of such defendant up to the value of the forfeitable property described in paragraphs 1 and 2.

                   A True Bill,

                   _____
                     Foreperson

_____
CRAIG CARPENITO
United States Attorney

13

CASE NUMBER: 19-CR-902 (WJM)

**United States District Court**
**District of New Jersey**

**UNITED STATES OF AMERICA**

v.

**JONATHAN BAKER**

**INDICTMENT FOR**

18 U.S.C. § 1343
18 U.S.C. § 1957
18 U.S.C. § 2

A True Bill

_____ Foreperson

**CRAIG CARPENITO**
*UNITED STATES ATTORNEY*
*NEWARK, NEW JERSEY*

JONATHAN FAYER
COURTNEY A. HOWARD
*ASSISTANT U.S. ATTORNEYS*
(973) 645-2718/(973) 645-2859